This is a mandamus proceeding. The petitioners are five Constables from Shelby County. They seek to compel the Honorable Kenneth F. Ingram, Presiding Judge of the Eighteenth Judicial Circuit, to rescind a "directive" issued by him to the clerk of the Circuit Court of Shelby County. The directive requires that all civil process be delivered to the sheriff for service. The directive follows:
 IN THE CIRCUIT COURT OF SHELBY COUNTY, ALABAMA
DIRECTIVE TO THE CLERK OF THE CIRCUIT COURT REGARDINGCERTAIN PROVISIONS OF RULE 4.1 (b)(1), ALABAMA RULESOF CIVIL PROCEDURE
Under Rule 4.1 (b)(1), Alabama Rules of Civil Procedure, provision is made for civil process to be served by the sheriff or by constable. The language of this rule seems to indicate to the Court that discretion is allowed either to the clerk of court or to the presiding circuit judge to designate who shall serve civil process.
This Court has been informed that some controversy has developed in this circuit court relative to the serving of such process. At the instance of the circuit clerk, and the probate judge, this Court met with constables Hope and Dunn, probate judge Snowden, Circuit court judge Sharbutt, sheriff Walker and clerk Lansford for the purpose of a discussion and determination of this question.
At this meeting, constables Hope and Dunn insisted that they should be allowed to serve some of the civil process in this county. On the other hand, the sheriff stated that he felt that his office could best perform this service as has been the procedure for many years.
The Court took the matter under advisement and upon consideration of the matter, is of opinion that it is presently in the best interest of the Court that there be uniformity of procedure in the service of civil process as far as practicable under the rule hereinabove stated.
The sheriff is staffed with the personnel and transportation facilities necessary to perform this service in the future as he has done in the past. His office has the communications facilities, when coupled with an orderly dispatch of deputies within the county, to expeditiously serve process as required by this rule. Additionally, the sheriff and/or his deputies are in regular attendance at court and subject to the Court's immediate directives in conjunction with the Court's business relative to service of process or otherwise.
In consideration of the above, the Court publishes this directive.
1. The clerk of this court is directed to deliver all civil process to the sheriff of this county for service under the provisions of Rule 4.1 (b), (1), as above cited.
2. The clerk of this court is directed to send a copy of this directive, by ordinary mail, postage prepaid, to each constable who presently holds such office in Shelby County, to the sheriff, the probate judge and to the circuit judge and district judge of this circuit and county. *Page 620 
Done at Chambers this 18th day of May, 1977.
 s/ Kenneth F. Ingram
PRESIDING CIRCUIT JUDGE OF THE EIGHTEENTH JUDICIAL CIRCUIT OF ALABAMA
The petitioners claim Judge Ingram has prevented them from performing their statutory and constitutional duties. They assert his action is contrary to Rule 4.1 ARCP. The answer of respondents contains the following:
 "8. In addition, Respondents show the following additional factual matters in answer to the Petition:
 "a. Prior to the publishing of the directive by Respondent Ingram, there was a serious dispute resulting in a critical situation in Shelby County, Alabama, concerning service of civil process, which impeded, obstructed and hindered the orderly operation, functions and proceedings of the judicial system in that county.
 "b. The Sheriff of the county declined to serve civil process and the clerk declined to designate who would serve civil process.
 "c. Under Rule 4.1 (b)(1), Alabama Rules of Civil Procedure, the clerk of the court has discretion to direct either the sheriff or constable to serve civil process.
 "d. Due to the situation existing in Shelby County, Respondent Lansford was not able to reach a decision and relinquished and waived his right to direct who shall serve civil process and deferred the matter to Respondent Ingram.
 "e. Under 4.1 (b)(2) ARCP, and Act No. 1205, Section 1205, Section 2-102, Regular Session 1975 (Title 13, Section 172, 1975 Interim Supplement, Code of Alabama 1940, Recompiled 1958), Respondent Ingram has the authority to direct and designate who shall make civil service and also has the responsibility to supervise the clerk and other officers and employees in his circuit.
 "f. At the request of Respondent Lansford after Respondent Lansford had relinquished his right to direct who would serve civil process and referred the matter to Respondent Ingram, under the broad powers and responsibilities vested in Respondent Ingram to supervise and administer the orderly process, operations and functions of the court, Respondent Ingram made a determination as to who would serve civil process and issued a directive.
 "g. Respondent Ingram in his judicial discretion determined that it was in the best interest of the court to direct the Sheriff to serve civil process to prevent an obstruction to the orderly operations and functions of the court system in Shelby County."
The office of constable is no longer a constitutional creature. Article VI, § 168, of the Alabama Constitution which established the office of constable was repealed by Constitutional Amendment No. 328, ratified on December 27, 1973. Section 6.20 (c) of Amendment No. 328 mentions the position of constable relative to constitutional restrictions on holding two public offices, and their receipt of fees. This section cannot be construed to thereby re-create the office of constable as one constitutional in nature.
Nevertheless, the office of constable has not been abolished. It remains as a creation of the Alabama Legislature. Title 54, § 28, Code of Alabama 1940, Recompiled 1958 (§ 36-23-1, Code of Alabama 1975).
The duties of a constable are found in Title 54, § 33, supra[1]:
"His duties are:
 "1. To attend the circuit court of the county when summoned by the sheriff for that purpose.
 "2. To execute and return all summons, executions, and other process to him directed by any lawful authority. *Page 621 
 "3. To pay over moneys collected by virtue of his office to the person entitled thereto.
 "4. To attend the sessions of the justices' courts in his precinct.
 "5. To perform such other duties as are, or may be, required of him by law."
The duty of Constables to execute and return civil process is conditioned upon such direction by lawful authority.
The clerk of the court is the lawful authority by which constables are directed to serve civil process. Rule 4.1 (b)(1), ARCP, provides:
 "When process issued from any court subject to the provisions of these rules is to be delivered personally, the clerk of the court shall deliver or
 mail the process and sufficient copies of the process and complaint, or other documents to be served, to the sheriff or constable of the county in which the party to be served resides or may be found."
Rule 4.1 (b)(1) is applicable to district courts as well as to Circuit Courts. This Rule was enacted by this court pursuant to its power to make and promulgate rules governing and administration of all courts and rules governing practice and procedure in all courts. Const. Amend. No. 328, § 6.11. The clerk of the court is thus obligated to deliver civil process for service in accordance with the rules of this court. Tit. 13, § 198 (a)(20)[2].
The clerk of the court has the discretion of whether to direct the sheriff or a constable to serve civil process. However, such discretion is not unbridled. Both the constables and the sheriff have a clear legal right to have official recognition in the execution of civil process without arbitrary discrimination. Woods v. Wood, 219 Ala. 523, 122 So. 835
(1929). Just as the clerk of the court cannot arbitrarily discriminate in favor of or against the sheriff or constable in delivering civil process for execution, neither can the circuit judge. Mathews v. Stephenson, 242 Ala. 406, 6 So.2d 483 (1942). The authority and duty to deliver process for service lies in the clerk.
On the other hand, presiding judges may exercise general supervision of clerks and sheriffs to see that they attend strictly to the prompt and diligent discharge of their duties. Tit. 13, § 172, Code of Alabama 1940; § 12-17-24, Code of Alabama 1975.
This statute does not however authorize the presiding judge to exercise the duties placed by law upon the clerk. Yet the presiding judge has the duty and responsibility to see that the circuit court functions properly. If a clerk fails to perform his or her duties placed upon him or her by law, mandamus or other proper remedy will lie to compel his action. In the absence of the court "directive" here in question such remedy directed to the clerk would have been proper.
The record does not totally advise us of the exact nature of the controversy. The record is clear however that no legally sufficient reason was given to preclude constables from serving any civil process. Thus, it would appear that the directive was to this extent arbitrary.
On this point, certain observations in Woods, supra, are pertinent:
 "Dealing with the discretion vested in the judge of the Gadsden inferior court, the law intends to make available more than one officer to the end that process may be promptly executed. In emergency cases special constables may be appointed. The justice or
 judge invested with like powers is the judge of such emergency in so far as relates to the legality of the appointment and the official acts of the appointee. Noles v. State, 24 Ala. 672. Many contingencies may be imagined wherein the prompt and effective administration of justice may suggest that process be turned over to one officer rather than another. *Page 622 
 "This court would not set such bounds upon the discretion given by law in such cases as to defeat the purposes of such discretion.
 "But we are not prepared to say the discretion here involved is an arbitrary power to determine who shall be the lawful executive officers of the court. To say one of the officers named by law shall have none of its process which he is competent, ready, and willing to serve is to arbitrarily deprive him of the emoluments thereof; is to abolish an office created by law in so far as made an officer of that court.
 "In thus construing his legal discretion, the judge of that court misconceives his legal duty. We think the constable has a clear legal right to have official recognition in the execution of process without arbitrary discrimination.
 "Can this error be remedied by mandamus? The general rule is recognized that mandamus is the appropriate remedy to effect the performance of one specific act, where there is a clear legal right. The supervision of a continuous course of official conduct, speaking broadly, is not within the remedy by mandamus.
 "But in Jeter v. State, supra [218 Ala. 12, 117 So. 460], this court did not refuse the remedy on such ground. In view of constitutional and statutory duty of higher courts to supervise by appropriate remedial writs the doings of inferior jurisdictions, only the strongest reasons should impel the court to deny such relief, where the inferior tribunal has misconceived the legal principles governing the course pursued and led to a denial of a clear legal right for which no other remedy exists.
. . . . .
 "Notwithstanding some difficulty in framing a writ of mandamus so as to correct the abuse of discretion without denying an advised and just exercise of discretion in keeping with the purposes for which it is given, we think it should not be denied in cases such as this.
 "As suggested in the Jeter Case, public officials who pursue a wrong course because of error in conceiving their legal duties are presumed to welcome correction, and to speedily set themselves on a proper official course when made known to them. No continuing supervision is necessary."
From what we have said it is clear that the duty to deliver process for service is with the clerk. In the exercise of that duty the clerk should not be arbitrary. If the clerk fails in his or her duty, remedies are available to compel his or her obedience to the law.
We do not wish to be understood, however, as holding that a presiding circuit judge cannot supervise court personnel to see that the business before the court is properly disposed of.
Nothing in this opinion should be construed as criticism of Judge Ingram's method of handling this matter. We have no reason to believe that he was motivated by other than an honest desire to maintain the efficient operation of the courts. To this end, his directive was made in good faith, and no doubt in the belief that such was within his lawful authority.
We are hopeful that the duties of the clerk are more clearly defined. If upon notification of this decision, the circuit court does not set aside the directive, then a writ will issue upon the request of the petitioner.
WRIT GRANTED CONDITIONALLY.
TORBERT, C.J., and BLOODWORTH, FAULKNER and EMBRY, JJ., concur.
[1] Even when the office of constable was a constitutional one, the duties of the office were a matter of legislative discretion. Henry v. Waldrop, 206 Ala. 135, 89 So. 371 (1921).
[2] § 12-17-94 (a)(5), Code of Alabama 1975, specifically requires the clerks of the circuit court (who are also ex-officio clerks of the District Court, Acts 1975, No. 1205, § 7-105 (a)) to exercise such duties as are conferred upon them by law, including administrative rules promulgated by order of this court. *Page 623